FLETCHER, Judge.
This appeal is a review upon remand from the Florida Supreme Court of a Declaratory Statement issued by the Division of Pari-Mutuel Wagering, Department of Business and Professional Regulation [DPMW]. Investment Corporation of Palm Beach d/b/a Palm Beach Kennel Club and Palm Beach Jai Alai [Palm Beach], Calder Race Course, Inc. [Calder], Tropical Park, Inc. [Tropical Park], and Gulfstream Racing Association [Gulfstream] ask us to find the Declaratory Statement in error regarding the disposition of uncashed tickets and breaks derived from intertrack wagering.[1] For the reasons which follow, we conclude that DPMW reached an incorrect result.
The issue before us involves the proper statutory disposition of the breaks[2] and uncashed tickets, or “outs,” derived from wagering on simulcast or intertrack broadcast races at in-state pari-mutuel facilities.[3] The parties have identified three wagering scenarios generating the disputed breaks and outs. Following the plain wording of chapter 550, we determine that breaks and outs in all three scenarios are considered part of that portion of the pari-mutuel pool known as takeout[4] for wagers on simulcast or intertrack races in Florida.
First, the parties identified the pure interstate wagering scenario — an out-of state race simulcast to an in-state track. In this context the takeout of the in-state track is increased by breaks and outs on wagers made at that track on the out-of-state race pursuant to section 550.3551(3)(c), Florida Statutes (1999). Section 550.3551(3) applies to the receipt of simulcast broadcasts from out-of-state race tracks and governs all Florida horse tracks, including Calder, Tropical Park, and Gulfstream. This statute provides that,
“(3) Any horse track licensed under this chapter may receive broadcasts of *847 horse races conducted at other horse race tracks located outside this state at the race track enclosure of the licensee during its racing meet.
(c) All forms of pari-mutuel wagering are allowed on races broadcast under this section.... Similarly, the takeout shall be increased by breaks and un-cashed tickets for tuagers on races broadcast under this section, notwithstanding any'contrary provision of this chapter.” [e.s.]
The language of this section expressly directs that the breaks and outs be made part of the takeout on wagers placed on simulcast broadcasts of out-of-state horse races, despite any other provisions to the contrary contained in chapter 550.
In the second scenario, a live out-of-state race is simulcast" to an in-state host track, which in turn re-broadcasts that out-of-state race to another in-state guest track. The legislature has provided that “the takeout on all intertrack wagering shall be the same as the takeout on similar pari-mutuel pools conducted at the host track.” [e.s.] § 550.6305(4), Fla. Stat. (1999). To determine what is included in the takeout at the host track, we refer back to the section on host track simulcast wagering, section 550.3551(3)(c), which instructs that the takeout is increased by breaks and outs. Thus, we conclude that breaks and outs generated as a result of intertrack wagering at a guest track (in these facts, Palm Beach) on races rebroadcast from a host facility (i.e., Calder, Gulfstream, or Tropical Park) are included as part of the takeout of the guest track in the same way that breaks and outs are included in a host track’s takeout generated by wagers placed at that track on simulcast races broadcast to the host track, following section 550.3551, Florida Statutes (1999). The DPMW’s Declaratory Statement determining that breaks and outs generated in this manner escheat to the State is incorrect.
In the context of this second scenario, Calder, Tropical Park, and Gulf-stream also contend that they are entitled to a portion of the breaks and outs generated at the guest track, Palm Beach, from wagers placed on intertrack races they, as host tracks, rebroadcast to Palm Beach. However, this contention is belied by section 550.6325, Florida Statutes (1999), which specifies that breaks and outs shall be retained by the permitholder conducting the live racing. When Calder, Gulf-stream, or Tropical Park act as a host track to rebroadcast an out-of-state race or game to Palm Beach, they are not entitled to the' breaks and outs generated by wagers placed at Palm Beach because they are not themselves conducting the live race which is being re-broadcast to Palm Beach. They merely act as the in-state broadcaster.[5] Such intertrack wagers are governed not by section 550.6325, but by sections 550.3551(3)(c) and 550.6305, Florida Statutes (1999).
This naturally leads to the third scenario, which involves live racing at an in-state track which is then simulcast to another in-state track. In this context, there is no question that if Calder, Gulf-stream, or Tropical Park themselves conduct the live race simulcast to Palm Beach they are then entitled to the breaks and outs generated by wagers placed at Palm Beach on that live race pursuant to section 550.6325, Florida Statutes (1999).
Finally, we note that section 550.6305(9)specifically entitles Palm Beach, as,a permitholder for dogracing and jai-alai, to 45% of the net proceeds[6] on wagers accepted at Palm Beach when it acts as a guest track for re-broadcasts of simul *848 cast horseraces from Calder, Gulfstream, or Tropical Park acting as host tracks, if the host track is both conducting live races and accepting wagers on simulcast races. § 550.6305(9)(d), Fla. Stat. (1999). Our previous analysis indicates that breaks and outs generated on re-broadcasts to guest tracks of simulcast races increase the guest track’s takeout from which “net proceeds” are distributed pursuant to section 550.6305(9), Florida Statutes (1999).
On the merits, we hold that the conclusions reached by DPMW in its Declaratory Statement regarding the disposition of breaks and outs derived from intertrack wagering on races re-broadcast from the host to the guest pursuant to chapter 550, Florida Statutes (1999), are clearly erroneous. We therefore reverse with instructions to vacate or modify the Declaratory Statement to conform to this opinion.
Reversed and remanded.

. For purposes of clarity, we will closely adhere to the definitions of the terms "simulcasting” and "intertrack wager” as defined in chapter 550.002, Florida Statutes(1999). A wager placed on a "simulcast” race, in this factual context, means placing a wager at an in-state facility on a live race broadcast from an out-of-state location. § 550.002(32). Fla. Stat. (1999). An "intertrack wager,” in this factual context, refers to a wager placed at an in-state facility on a live race transmitted from and performed live at, or simulcast signal re-broadcast from, another in-state facility. § 550.002(17), Fla. Stat. (1999).

. "Breaks” means the portion of a pari-mutu-el pool which is computed by rounding winnings paid to bettors down to the nearest multiple of ten cents and "is not distributed to the contributors or withheld by the permit-holders as takeout.” § 550.155(4),(5), Fla. Stat. (1999).

. "Guest track” means a track accepting an intertrack wager. § 550.002(12), Fla. Stat. (1999); "Host track” means a track conducting a live or simulcast race that is the subject of an intertrack wager. § 550.002(16), Fla. Stat. (1999).

. All monies from wagers on a race become part of the pari-mutuel pool, § 550.002(24), Fla. Stat. (1999), from which the race track deducts its own expenses, taxes, and profits (the "takeout,” § 550.002(34)), after which distributions are made to winning bettors, for the purse and breeder awards, as well as to the DPMW.

. However, breaks and outs generated by wagers placed at the host track on those races then re-broadcast to a guest track are, according to section 550.6305(9), Florida Statutes (1999), included in the host track’s takeout as provided in section 550.3551.

. § 550.6305(9)(a), Fla. Stat. (1999).